UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| MONTANA CONNECTION, INC., et al., | ) |
| Plaintiffs, | ) Civil Action No. 3:12-cv-0824 |
| v. | ) Chief Judge William J. Haynes, Jr. |
| JUSTIN MOORE, et al., | ) JURY DEMAND |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE No. 2 TO EXCLUDE THE DISCLOSURE AND TESTIMONY OF DEFENDANT'S WITNESS WILES AS AN EXPERT**

Plaintiffs Montana Connection, Inc. and Matthew Britton Currie p/k/a Britton Curry ("Plaintiffs"), by and through their attorneys, respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion *in Limine* No. 2 to Exclude the Disclosure and Testimony of Defendant's Witness Wiles as an Expert. For the reasons stated herein and in the supporting documents filed herewith, Plaintiffs submit that this motion should be granted.

## I. STATEMENT OF FACTS

**A. Procedural Posture of the Case**

On August 10, 2012, Plaintiffs filed a Complaint for copyright infringement, seeking among other things, monetary damages and declaratory and injunctive relief, and alleging that Defendants infringed Plaintiffs' copyrighted musical composition "In the Backwoods." (Doc. 1, Compl.) On November 5, 2013, the Court granted Plaintiffs leave to amend their Complaint (Doc. 99, Order). Plaintiffs' First Amended Complaint, adding Defendant Rebel Rooster, Inc. ("RRI"), among other things, was filed November 5, 2013. (Doc. 102, Amended Compl.)

Defendant RRI filed its answer on November 19, 2013. (Doc. 117, Answer) Plaintiffs alleged that Defendants engaged, and continue to engage, in unauthorized copying, preparation of derivative works, reproduction, distribution, display and the public performance of Plaintiffs' copyrighted musical composition "In the Backwoods," without Plaintiffs' knowledge or permission, including Defendants placing their own copyright notices on their infringing musical composition and sound recording, "Backwoods," which copies, without authorization, Plaintiffs' copyrighted work "In the Backwoods."

On January 11, 2013, this Court entered its Initial Case Management Order, which read, in part,

> For expert witnesses, the expert's Fed. R. Civ. P. 26(a)(2) report is considered to be the expert's direct examination testimony at trial. If an expert expects to expound his or her testimony beyond the wording of the expert's report, the party calling the expert shall inform the opposing party with the specifics of that expounding testimony at least fifteen (15) days prior to the dispositive motion deadline.

(Doc. 43 at 9) On January 14, 2013, this Court entered Case Management Order No. 2, which required, among other things, that "Expert disclosures shall be made in accordance with Fed. R. Civ. P. 26(a)(2) or has been otherwise ordered by the Court. No expert witness shall testify beyond the scope of his or her expert witness disclosure." (Doc. 44 at 3)

**B. RRI Produces Mr. Wiles's Expert Report**

On June 20, 2014, Defendant RRI provided a two-page expert witness disclosure for Dwight Wiles which stated it was made pursuant to Fed. R. Civ. P. 26(a)(2)(C). (DeSalvo Decl., ¶ 3, Ex. A, Wiles Discl.) This disclosure identifies Mr. Wiles as a Certified Public Accountant, and that his firm, Smith Wiles & Company, P.C., is the business manager for Defendants Justin Moore and RRI. Attached to the disclosure are Accountant's Compilation Reports for RRI for the years 2008 to 2013, and a transcript of Mr. Wiles's December 5, 2013, deposition as the Fed.

R. Civ. P. 30(b)(6) representative for RRI. (*Id.*, Ex. A–G) Exhibit C to Mr. Wiles's disclosure contains a 2010 financial statement, which RRI admits was later corrected[1] (DeSalvo Decl., ¶ 4, Ex. B, RFA Resp. #17); however, the corrected 2010 statement is not attached. Mr. Wiles also states in the disclosure that he previously executed "declarations" as RRI's custodian of the records for the financial statements attached to the disclosure. (*Id.*, Ex. A at 1) He executed a single declaration for documents marked RR00001-110 only. (*Id.*, ¶ 5, Ex. C , Custodian Decl.)

The Accountant's Compilation Reports for 2008 to 2013 included in Mr. Wiles's disclosure each contain cover letters, which read, in part,

> We have not audited or reviewed the accompanying financial statements . . . The objective of a compilation is to assist management in presenting financial information in the form of financial statements *without undertaking to obtain or provide any assurance that there are no material modifications that should be made to the financials (sic) statements.* . . . Management has elected to omit substantially all of the disclosures *normally included* in the financial statements prepared on the income tax basis of accounting. *If the omitted disclosures were included in the financial statements, they might influence the user's conclusions about the company's assets, liabilities, equity, revenues, and expenses.*

(emphasis added) (*Id.*, ¶ 6, Ex. D, RR000006, 10, 15, 49, 54, 432)

A majority of Mr. Wiles's 181-page deposition contains discussions of various aspects of RRI's business, which Mr. Wiles is familiar with because he is the principal of RRI's accounting firm, Smith, Wiles & Company, and a director and officer of RRI. Aside from his identifying his

---

[1] The "later corrected" documents were produced the day before RRI's December 5, 2013 deposition, well in advance of the due date of Mr. Wiles's report. Moreover, Rebel Rooster objects to authenticating the dates of their own documents, claiming that the "documents bear no date as to when they were created." (DeSalvo Decl. Ex. B, RFA, Resp. #17) Each Accountant's Compilation Report for 2008 to 2012 is dated October 30, 2013, and 2013's is dated January 1, 2014; each page of the financial statements for 2008 to 2013 bears the legend "See Accountant's Compilation Report." (*Id.*, ¶ 3, Ex. A, Report, Exs. A- F) RRI also refused to authenticate the signatures appearing on each of RRI's compilation reports despite clear instructions to do so. ("Further, if the document bears a signature that appears to be yours, please admit that the signature is yours.") (DeSalvo Decl., Ex. B, Resp. #17) The endorsements on the compilation reports are not signatures since they bear the handwritten name of Mr. Wiles's company, Smith, Wiles, rather than his name. RRI claims it does not understand what an "endorsement" is and that "it is incapable of any reasonable interpretation." (*Id.*) It is a common word in the dictionary.

3

job and the documents attached to the disclosure, no other information is contained in Mr. Wiles's disclosure.

For the reasons shown herein, Mr. Wiles's expert disclosure must be excluded in its entirety and Mr. Wiles should not be permitted to testify as an expert.

## II. ARGUMENT

### A. The Legal Standard

#### 1. The Federal Rules of Evidence

The role of an expert witness in federal court is governed by Federal Rules of Evidence, Rules 702 through 705. To analyze whether the testimony of an expert is admissible in a given case, Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The judge serves as gatekeeper to ensure that expert testimony is relevant and reliable. *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 407 (6th Cir. 2006) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)).

A court's determination as to whether testimony is reliable "must be based solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529–30 (6th Cir. 2008) ("The district court's task in determining an expert opinion's reliability is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation" (citing Fed. R. Evid. 702)).

4

The Supreme Court in *Daubert* enunciated a non-exhaustive list of factors to assist a court in making a determination of expert reliability, which includes: (1) whether a technique or theory has been or can be tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; (4) the existence and maintenance of standard of control of the technique's operation; and (5) whether the theory or technique enjoys "general acceptance" in a "relevant scientific community." 509 U.S. at 592–95. A district court has "broad latitude" in deciding which factors to apply in a particular case. *Kumho Tire Co.*, 526 U.S. at 142.

Whether a court should apply the *Daubert* factors "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co.*, 526 U.S. at 150 (quotation omitted). To be sure, the court's gatekeeper function extends to all expert testimony, not merely to scientific testimony. *See id.* at 148. The proponent of expert testimony has the burden to prove by a preponderance of the evidence that an expert's testimony satisfies the admissibility requirements. *EEOC v. Kaplan Higher Educ. Corp.*, 748 F.3d 749, 753 (6th Cir. 2014) (citing Fed. R. Evid. 702 advisory committee's note (2000)). If a proponent of expert testimony establishes a witness's initial expert qualifications and usefulness to the jury, a district court must persist in "its gatekeeping role by ensuring that actual testimony does not exceed the scope of the expert's expertise." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001).

**2. The Court's Case Management Orders**

The Court also ordered that "[e]xpert witness disclosures shall be made in accordance with Fed. R. Civ. P. 26(a)(2) or as has been otherwise ordered by the court. No expert witness shall testify beyond the scope of his or her expert witness disclosure. The Court may exclude or

5

strike the testimony of an expert witness, or order other sanctions provided by law, for violation of the expert witness disclosure requirements." (Doc. 44, Order; *see also* Doc. 43, Order ("These rules on experts are to ensure full compliance with Rule 26(a)(2), to enable the parties to evaluate any *Daubert* challenges prior to filing dispositive motions …")).

### 3. The Court Has Discretion to Exclude Information and Witness's Testimony

When a party fails to provide information or to supplement information included in the report as required by Fed. R. Civ. P. 26(a) and (e), that party is not allowed to use that information or witness to supply evidence on a motion, at a hearing or at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (a) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (b) may inform the jury of the party's failure; and
>
> (c) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

*Id.* Thus, in addition to imposing consequences based on Defendant's failure to comply with the Court's Orders, the Court has discretion to exclude information and testimony not provided as required under the Federal Rules of Civil Procedure. As shown below, exclusion of Dwight Wiles's expert report and testimony as an expert at trial, hearing or on any motion is proper as such failures neither are harmless nor substantially justified.

### B. The Court Should Exclude the Expert Disclosure Dwight Wiles and His Testimony as an Expert

The Court's Orders make clear that parties must follow the dictates of Fed. R. Civ. P. 26(a)(2) concerning expert witnesses and that an expert's testimony will be limited to the scope

6

of his or her report. (Docs. 43, 44) Failure to follow these rules gives the Court discretion to "exclude or strike the testimony of an expert witness, or order other sanctions provided by law . . . ." (Doc. 44, Order at 2-3; *see also* Fed. R. Civ. P. 37 (c)(1))

Fed R. Civ. P. 26(a)(2) requires that certain disclosures be made for a party to present evidence under Fed. R. Evid. 702, 703 or 705. The requirements for these disclosures differ in scope depending upon whether a "witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). If the witness in question meets this definition, the disclosures must follow the requirements of Rule 26(a)(2)(B). If the witness does not meet this, the requirements of Rule 26(a)(2)(C) may apply instead:

> Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, [the] disclosure must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C).

RRI designated Dwight Wiles pursuant to Fed. R. Civ. P. 26(a)(2)(C). For him to be allowed to testify as an expert witness, he is required to make a disclosure that complies with that rule. He failed to do so. Mr. Wiles's disclosure includes a brief recitation of his job description and a listing of exhibits. It is difficult to conclude that this disclosure states "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify."

A qualified expert witness may only testify in the form of an opinion or otherwise if such testimony "will help the trier of fact" and "the testimony is based on sufficient facts or data." Fed. R. Evid. 702. The accountant compilation reports included in Mr. Wiles's disclosure are

7

merely summaries of RRI's financials—summaries which admit that "[Smith, Wiles & Company has] not audited or reviewed the accompanying financial statements . . . . The objective of a compilation is to assist management in presenting financial information in the form of financial statements without undertaking to obtain or provide any assurance that there are no material modifications that should be made to the financials (sic) statements." (DeSalvo Decl., Ex. D; see also *id.*, Ex. A, Wiles Discl., Exs. A–F) It is unclear how an expert opinion regarding these compilations would be helpful to the trier of fact. Furthermore, the fact that these compilations do not "provide any assurance" of "material modifications" makes them an insufficient basis for expert testimony under Fed. R. Evid. 702.

The inclusion of Mr. Wiles's entire deposition as an exhibit to his Fed. R. Civ. P. 26(a)(2)(C) disclosure also is perplexing. Not only does the deposition fail to meet the rule's requirement that the disclosure must state, "a summary of the facts and opinions to which the witness is expected to testify," it provides no further assurances that expert testimony by Mr. Wiles would "help the trier of fact" or be "based on sufficient facts or data." Fed. R. Evid. 702.

The Court's Order requires full compliance with Fed. R. Civ. P. 26(a)(2) "to enable the parties to evaluate any *Daubert* challenges prior to filing dispositive motions . . . ." (Doc. 43, Order) Because Mr. Wiles's report does not include the required disclosures of Fed. R. Civ. P. 26(a)(2)(C), there is no means by which to determine if Mr. Wiles's testimony would be admissible under Fed. R. Evid. 702, which in turn, violates the requirement that "[e]xpert witness disclosures be made in accordance with Fed. R. Civ. P. 26(a)(2)." (Doc. 44, Order) Thus, the Court "may exclude or strike the testimony" of Dwight Wiles, and Plaintiffs request that the Court do so on this basis. *Id.*; *see also* Fed. R. Civ. P. 37(c)(1).

In addition, an "expert's Fed. R. Civ. P. 26(a)(2) report is considered to be the expert's

Case 3:12-cv-00824   Document 190   Filed 09/08/14   Page 8 of 10 PageID #: 1915

direct examination testimony at trial," and the expert's testimony is limited to "the scope of his or her expert witness disclosure." (Docs. 43 at 9; 44 at 3, Orders)  Defendants have had more than ample opportunity to present, to supplement, and/or to expound upon Mr. Wiles's report, and each deadline has passed.  (Docs. 43, 44, 164, 169, Orders)  Defendants were given nearly nine (9) additional months to prepare and serve his report.  As shown, Defendants' failures neither are harmless nor substantially justified.  For the reasons stated, Plaintiffs respectfully request that the expert disclosure and Mr. Wiles's testimony as an expert be excluded in its entirety, and that it cannot be used in support of any of Defendants' motions, or at any hearing or trial.

### III.  CONCLUSION

For all of the foregoing reasons, Plaintiffs request that Dwight Wiles's expert disclosure and all of Mr. Wiles's proffered opinions and conclusions, if any, be excluded in their entirety.

DATED:  September 8, 2014                          Respectfully submitted,


DESALVO & LEVINE PLLC

/s/ Ramona P. DeSalvo_____
Ramona P. DeSalvo (#018491)
L. Kevin Levine (#026758)
1720 West End Ave., Suite 403
Nashville, TN 37203
Telephone: (615) 600-4741
rdesalvo@desalvolevine.com
klevine@desalvolevine.com

*Attorneys for Plaintiffs Montana Connection, Inc., and Matthew Britton Currie*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Memorandum of Law in Support of Plaintiffs' Motion *In Limine* No. 2 to Exclude the Disclosure and Testimony of Defendant's Witness Wiles as an Expert was served via the Court's electronic filing system upon the following:

John R. Jacobson, Esq.
Timothy L. Warnock, Esq.
Elizabeth O. Gonser, Esq.
Chris Vlahos, Esq.
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
jjacobson@rwjplc.com
twarnock@rwjplc.com
egonser@rwjplc.com
cvlahos@rwjplc.com
*Attorneys for Defendants Justin Moore, individually and d/b/a Double Barrel Ace Music, Big Machine Music, LLC f/k/a Super '98 Music, LLC; The Valory Music Company LLC, Universal Music Group Distribution, Corp., and Rebel Rooster, Inc.*

Chanelle A. Johnson, Esq.
Neal & Harwell, PLC
150 4th Avenue North, Suite 2000
Nashville, TN 37219
cjohnson@nealharwell.com
*Attorney for Jamie Paulin, individually and d/b/a Pawpaw Paulin Publishing*

Derek Crownover, Esq.
Austin Adams, Esq.
R. Cameron Caldwell, Esq.
Dickinson Wright, PLLC
54 Music Square East, Suite 300
Nashville, TN 37203
dcrownover@dickinsonwright.com
aadams@dickinsonwright.com
ccaldwell@dickinsonwright.com
*Attorneys for Jeremy Stover, individually and d/b/a Songs of Countrywood, EMI April Music, Inc., and EMI Blackwood Music, Inc.*

Ilene S. Farkas, Esq.
Donald S. Zakarin, Esq.
Pryor Cashman LLP
7 Times Square
New York, NY 10036
ifarkas@pryorcashman.com
dzakarin@pryorcashman.com
*Attorneys for EMI April Music, Inc. and EMI Blackwood Music, Inc.*

on this 8th day of September 2014.

/s/ Dera K. Shelton_____