## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

MONTANA CONNECTION, INC., )
et al., )
                   )
      Plaintiffs, )
                   )
v. )     No. 3:12-cv-0824
                   )     Senior Judge Haynes
JUSTIN MOORE, et al., )
                   )
      Defendants. )

## MEMORANDUM

Plaintiffs, Montana Connection, Inc. ("Montana") and Britton Currie, filed this action under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. for copyright infringement against the Defendants: Justin Moore, individually and doing business as Double Barrel Ace Music; Jamie Paulin, individually and doing business as Pawpaw Paulin Publishing; Jeremy S. Stover, individually and doing business as Songs of Countrywood; Big Machine Music, LLC (formerly known as Super '98 Music, LLC); EMI April Music Inc.; EMI Blackwood Music Inc.; the Valory Music Company, LLC; Universal Music Group Distribution, Corp.; and Rebel Rooster, Inc.

Plaintiffs' claims arise out of the alleged wrongdoing by Defendants concerning an unpublished musical compositions entitled "In the Backwoods" ("Plaintiffs' Song") that Britton Currie and Robert L. Carmichael authored in 2003. Plaintiffs allege that effective January 1, 2003, Carmichael transferred his property interest in "In the Backwoods" to Montana, his publisher, for which Carmichael is the chief executive officer. Plaintiffs contend that Defendants' song "Backwoods" infringes on their song "In the Backwoods."

Before the Court is Defendants' motion for summary judgment (Docket No. 180), contending that Plaintiffs cannot prove that the Defendant Writers copied Plaintiffs' Song. Specifically, Defendants contend: (1) that Plaintiffs admit the lack of proof any direct proof of copying; (2) that Plaintiffs fail to present evidence that Defendants had access to Plaintiffs' Song; (3) that Plaintiffs cannot prove substantial similarity exists between the two songs because none of the elements of Plaintiffs' Song appears in Defendants' Song; (4) that Plaintiffs' request for declaratory judgment that Defendants' Song is an "unauthorized derivative work" is not allowed under the Copyright Act nor can Plaintiffs establish that Defendants' Song is an unauthorized derivative work; and (5) that Plaintiffs are not entitled to either statutory damages or attorneys' fees and costs given Plaintiffs' untimely copyright registration.

In response, Plaintiffs contend, in essence, that material issues of fact exist, precluding the granting of summary judgment; that declaration of Plaintiffs' ownership of Defendants' song is a proper remedy; and that attorneys' fees and statutory damages are recoverable.

For the reasons set forth below, the Court concludes that Defendants' motion for summary judgment should be denied as Plaintiffs have established material factual disputes as to their copyright infringement claim.

## A. REVIEW OF THE RECORD[1]

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Because material factual disputes exist, this section does not constitute a findings of fact under Fed. R. Civ. P. 56.

Plaintiffs Montana and Britton Currie co-own the musical composition "In the Backwoods." (Docket Entry No. 245, Defendants' Response to Plaintiffs' Statement of Additional Material Facts in Dispute, at ¶ 1). In January 2003, Currie and Bobby Carmichael co-wrote "In the Backwoods." Id. at ¶ 2. Carmichael transferred his copyright interest in "In the Backwoods" to Montana, his publisher, effective January 1, 2003. Id. at ¶¶ 3, 7. Carmichael is also the chief executive officer of Montana. Id. at ¶ 4.

In 2004, Carmichael and Currie recorded a "work tape" of "In the Backwoods." (Docket Entry No. 225, Plaintiffs' Response to Defendants' Statement of Undisputed Facts, at ¶ 11). The "worktape" consisted of eight compositions, including "In the Backwoods." (Docket Entry No. 245 at ¶¶ 31-32. Carmichael considered Plaintiffs' Song "finished" upon completion of the "work tape." (Docket Entry No. 225 at ¶ 12). On February 17, 2004, after recording the "work tape," Carmichael turned in the "worktape" of "In the Backwoods" to Island Bound Music, where Carmichael was a staff songwriter from September 1993 to August 31, 2003, for pitching. (Docket Entry No. 245 at ¶¶ 10, 34). Sometime in 2005, Currie recorded a full band "demonstration recording" version of Plaintiffs' Song and six other songs ("the Project"). (Docket Entry No. 225, at ¶ 13).

In June 2008, Justin Moore, Jamie Paulin, and Jeremy Stover, co-wrote "Backwoods" during a writing session at Stover's house. Id. at ¶ 14. According to Moore, the inspiration for the "backwoods" theme that he introduced to Paulin and Stover for Defendants' Song came during a 2008 trip by Moore to Pike County, Kentucky, that Mooore considered to be "way out in the middle of nowhere in the backwoods of Kentucky." Id. at ¶¶ 27-28, 30. Moore, Paulin and Stover all testified that they were unaware of Plaintiffs' Song at the time of their writing "Backwoods."

(Docket Entry No. 140-6, Moore Deposition at p. 76; Docket Entry No. 140-8, Stover Deposition at p. 14; Docket Entry No. 140-7, Paulin Deposition at p. 131).[2]

Plaintiffs contend that Defendants had access to Plaintiffs' Song prior to Defendants writing "Backwoods." In support, Plaintiffs cite Carmichael's testimony that he met Paulin, who worked at Island Bound Music from 2002 through December 2004, at Island Bound Music and that around "2003, 2004, somewhere in there" Paulin told Carmichael that he liked that 'backwoods' song." (Docket Entry No. 140-1, Carmichael Deposition at pp. 64, 154-55; Docket Entry No. 225 at ¶ 21; Docket Entry No. 245 at ¶ 39; Docket Entry No. 140-7, Paulin Deposition at p. 36). Julie Daniel, an owner of CTM Music, Inc., doing business as Island Bound Music, states that during this period Paulin "remained close to the Island Bound family and was in and out of the office and studio visiting or co-writing with some of [the] writers." (Docket Entry No. 220, Daniel Declaration at ¶ 8). Heather Currie, Britton Currie's wife, who also worked at Island Bound, testified that she played the "In the Backwoods" worktape at Island Bound in Paulin's presence, but admitted that she could not specifically recall if Paulin were present when the song "In the Backwoods" was played. (Docket Entry No. 140-4, Heather Currie Deposition at pp. 12-13, 26-29, 33-34).

Britton Currie testified that Paulin was present at a November 3, 2004 showcase at 3rd & Lindsley when Currie performed "In the Backwoods." (Docket Entry No. 140-3, Currie Deposition at pp. 92-94, 105-06). Carmichael and Heather Currie testified that they could not recall if Paulin were present at the November 3, 2004 showcase at 3rd & Lindsley. (Docket Entry No. 140-1, Carmichael Deposition at p. 112; Docket Entry No. 140-4, Heather Currie Deposition at pp. 43-44).

---

[2]The Court's citations are to the pagination in the Court's electronic case filing system. The Court's citations denoted by a "p." refer to the pagination of a deposition.

Yet, Defendants dispute that Paulin was at any of Currie's showcases in 2004, citing Paulin's testimony that as he was recovering from surgery in the spring and then had a second, corrective surgery in early October, (Docket Entry No. 140-7, Paulin Deposition at p. 158), Paulin only left home for work and "not to [his] knowledge" did he attend any showcases. Id.

As other examples of access, Plaintiffs assert that Carmichael performed the song "In the Backwoods" at Island Bound Music and that Paulin was present for the song, (Docket Entry No. 245 at ¶ 37). Heather Currie handed a copy of the Project to Stover in his office in an old house on Music Row in 2005, id. at ¶¶ 54-56, and that Britton Currie handed a copy of the Project to Stover at a showcase for Rachel Lane, an artist whom Stover formerly produced. Id. at ¶¶ 53, 57, 61. Defendants, however, dispute these assertions. Defendants contend that Carmichael speculates that Paulin was present during the live performance of Plaintiffs' Song at Island Bound and that Britton Currie denied such a performance occurred. (Docket Entry No. 140-1, Carmichael Deposition at pp. 91-94; Docket Entry No. 140-3, Britton Currie Deposition at p. 41).

Further, Defendants contend that Plaintiffs' allegations that Heather Currie handed a copy of the Project to Stover in his office in an old house on Music Row in 2005 and that Britton Currie handed a copy of the Project to Stover at a showcase for Rachel Lane are factually impossible. Defendants cite that (1) Stover did not have an office in an old house on Music Row, but worked for a publisher in Berry Hill, (Docket Entry No. 225 ¶ 40; Docket Entry No. 140-8, Stover Deposition at pp. 28-30); (2) Stover rented office space on the eighth floor of the United Artists tower on Music Row and the door to Stover's office required a punch code to unlock and enter, (Docket Entry No. 225 at ¶¶ 41-42); (3) the only other office space Stover rented in 2005 was located in Berry Hill, not on Music Row, (Docket Entry No. 225 at ¶ 43); (4) Rachel Lane did not perform any showcases or

5

other live performances in 2005, (Docket Entry No. 225 at ¶ 47); and (5) Stover had a strict policy since 2003 of not accepting unsolicited material only from persons recommended by persons whom he trusted, (Docket Entry No. 225 at ¶ 44).

According to Carmichael, in December 2011, he heard the song "Backwoods" on the radio and believed it to be virtually identical to his co-authored copyrighted composition, "In the Backwoods." (Docket Entry No. 245, at ¶ 8). Carmichael notified Currie in February 2012 that the composition and sound of "Backwoods" infringed the song "In the Backwoods." Id. at ¶ 9. Although Currie heard Defendants' Song prior to Currie's notification, Currie did not discuss Defendants' Song with Carmichael. (Docket Entry No. 225, at ¶ 33). On March 9, 2012, Plaintiffs applied for a registration of "In the Backwoods" with the Copyright Office. Id. at ¶ 34. On February 11, 2013, Defendants' Song "Backwoods" was registered with the Copyright Office. (Docket Entry No. 219-20).

As to the issue of substantial similarity, the parties present expert testimony. Alexander Stewart, Plaintiffs' expert musicologist, opines that the phrase "in the backwoods" contains the same pitch sequence, rhythms and metric placement in both Songs. (Docket Entry No. 245 at ¶ 109; Docket Entry No. 224, Stewart Declaration at ¶ 5). According to Stewart, all iterations of the signature phrase that comprises the hook, the most important part, of both songs are substantially similar in melodic setting, rhythm, and metric placement and that these similarities are consistent throughout the first five phrases of the chorus of both songs. (Docket Entry No. 245 at ¶ 96; Docket Entry No. 224).

Stewart also opines that the musical expression at the heart of this controversy consists of more than 20 consecutive pitches, divided into five structural phrases, with 20 of the first 22 pitches

6

(or 91 percent) of the chorus of "In the Backwoods" in the same sequence as "Backwoods." (Docket Entry No. 224, at ¶ 6). Stewart asserts that the phrases are identically ordered and are set to very similar rhythms with identical metric placement. Id. Stewart opines that this musical expression forms the main part of the "hook" or the most memorable and valuable part of each song. Id. In Stewart's opinion, both Songs' use a measure of 2/4 during the penultimate measure of the verse, before the chorus, that is an unusual detail that provides compelling evidence of copying. Id. at ¶ 8. According to Stewart, using a measure of 2/4 in the same manner as in "In the Backwoods" and "Backwoods" is rare among the thousands of country songs. (Docket Entry No. 245 at ¶ 118).

Anthony Ricigliano, Defendants' musicologist expert, opines that there is not any substantial similarity of protectable expression between Plaintiffs' and Defendants' Songs and that many of the similarities noted in Plaintiffs' and Defendants' Songs result from the common musical style, ideas and lyrical themes inherent in blues-influenced country songs. (Docket Entry No. 145, Ricigliano Declaration at ¶¶ 4-5). Ricigliano asserts that an examination of prior art demonstrates that much prior art uses many of the similarities between Plaintiffs' and Defendants' Songs, including (a) the prominent use of the lyric "backwoods," (b) the musical setting of that lyric and (c) the use of 4/4 time with a 2/4 time signature before the chorus, all of which underscore the non-protectable expression in the comparison of these works. Id. at ¶ 6. Ricigliano opines that Plaintiffs' and Defendants' Songs do not share any significant, meaningful or protectable melodic content, including pitch series, rhythm or rhythmic patterns, melodic development or structure and that Plaintiffs' and Defendants' Songs use the lyrical phrase "in the backwoods" differently. (Docket Entry No. 225 at ¶¶ 70-71).

7

Ricigliano further opines that the key, tempo and length of the recording of Defendants' Song are all different than in Plaintiffs' Song; and although both verse sections of the Songs use the same three or four note design, dramatic differences exist in pitch series, rhythm and melodic development between the two Songs. Id. at ¶ 75. Ricigliano acknowledges that similarities between the chorus sections of Plaintiffs' Song and Defendants' Song, but explains that the choruses of Plaintiffs' Song do not contain any protectable similarities present in Defendants' Song, including melodic content, harmonic content (chords/chord progression) or musical structure. Id. at ¶ 76. Ricigliano describes the 2/4 time signature prior to the chorus as of minimal importance because a 2/4 bar before the chorus is very common in country music. Id. at ¶ 78.

Stewart challenges Ricigliano's report as failing on methodological and analytical grounds, namely, that Ricigliano "fails to adhere to his own premise . . . that rhythm and phrase structure are essential elements of melody." (Docket Entry No. 224, Stewart Declaration at ¶ 12). Stewart notes that Ricigliano's "argument relies entirely upon the familiar reductionist tactic of breaking protectable expression into small enough elements so that they become unprotectable." Id.

Addressing Ricigliano's examples of prior art using the phrase "backwoods" or "in the backwoods," Stewart asserts, "Mr. Ricigliano provides three examples of songs containing the word "backwoods" in which the syllables are set to the pitches 3-1. First, according to the dates of publication provided by Mr. Ricigliano, none of them clearly predate ['In the Back woods']. One, 'Backwoods' by Mac Dre, was in fact created *years* after ['In the Back woods'], and, as a rap song, does not sound remotely similar to any of the musical expression in the country songs at issue in this case." (Docket Entry No. 224-1, Stewart's Expert Report at 90) (emphasis in original). As to the pitch sequence of these three examples of prior art, Stewart notes that "*none* of the songs cited by

8

defendants' expert contain the words and musical expression *"in the* backwoods." Id. at 91-92 (emphasis in original).

In response, Ricigliano asserts, "[t]here is no musicological precedent that requires a musical example of prior art to be in the same genre in order to demonstrate a non-protectable element or to reinforce a position of coincidence." (Docket Entry No. 244, Ricigliano Declaration at ¶ 4). Ricigliano explains that his "analysis does not dissect the musical phrases at issue to a note-by-note comparison but rather takes the claimed similar musical phrases and compares those claimed similarities to prior works that utilize the same elements in determining the originality and protectability of the musical expression in the two works." Id. at ¶ 6. Ricigliano also states that there "are not '22 notes' at issue in the chorus; there are, at most, 16 and they are quite different." Id. at ¶ 9.

While the parties differ slightly on the lyrics of Defendants' composition provided by Ricigliano and the lyrics transcribed by Stewart, (Docket Entry No. 245 at ¶¶ 119-20), the lyrics to the two Songs are, essentially, as follows:

"In the Backwoods

When Friday come and the work is done,
We'll pack up and be gone.
To the place that I know uh
I could feel at home.

Well there's peace and quiet and every
night we'll count our lucky stars
Find ourselves kickin' back
Right there in God's backyard

Ah in the backwoods, on the weekend
You can find me just a'killin' time
May your worries, any trouble
Any problems,

"Backwoods"

Rifle in a gun rack hangin' in the back glass
Buck knife on my belt, ain't no land for sale around here
Red clay country mud, sippin' on a cold Bud

Blue tick coon hound, you know where I'm found

Out in the backwoods, down in the holler
Out in the backwoods, workin' hard for a dollar
In the backwoods, yeah, we get it done right
Work hard, play hard, hold my baby tight
Lordy have mercy, it's a real good life in the

we'll leave them all behind
we'll leave them all behind

Well I got my girl and in our world
We're in paradise,
just feelin' free, shootin' the breeze
with the river rolling by.

In the backwoods
On the weekend
With my baby and a old guitar
Gonna sing her a little love song
All night long, gonna start a fire

Drivin' two hour and I just turned off this
busy interstate
It's time we had some time alone
Out of that old rat race.

Down in the backwoods, on the weekend
You can find me, just a killin' time
Any worries, any trouble
Any problems,
We'll leave 'em all behind

In the backwoods, on the weekend
With my baby and a old guitar
Gonna sing her a little love song
All night long, we're gonna start a fire
we're gonna start a fire, yeah
we're gonna start a fire.

(Docket Entry No. 224-1 at 69).

backwoods, yes sir

Preacher's daughter couldn't get hotter
Floatin' that river on an inner tube with her,
splash
35's and a lift kit, how stuck can you get?
Ain't that just my luck, where's the chain?
I'm stuck

Out in the backwoods, down in the holler
Out in the backwoods, workin' hard for a
dollar
In the backwoods, yeah, we get it done right

Work hard, play hard, hold my baby tight
Lordy have mercy, it's a real good life in the
backwoods

Out in the backwoods, down in the holler
Out in the backwoods, workin' hard for a
dollar
In the backwoods, yeah, we get it done right
Work hard, play hard, hold my baby tight
Lordy have mercy, it's a real good life in the
backwoods
Out in the holler, son, out in the backwoods

## B. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as

the opposing party was on notice that [he] had to come forward with all of [his] evidence." <u>Celotex</u>

<u>Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986); <u>accord</u>, <u>Routman v. Automatic Data Processing, Inc.</u>, 873

F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court

explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment
> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories,
> and admissions on file, together with the affidavits, if any, show that there is no
> genuine issue as to any material fact and that the moving party is entitled to a
> judgment as a matter of law." By its very terms, this standard provides that the mere
> existence of <u>some</u> alleged factual dispute between the parties will not defeat an
> otherwise properly supported motion for summary judgment; the requirement is that
> there be no <u>genuine</u> issue of <u>material</u> fact.

> <u>As to materiality, the substantive law will identify which facts are material. Only</u>
> <u>disputes over facts that might affect the outcome of the suit under the governing law</u>
> <u>will properly preclude the entry of summary judgment.</u> Factual disputes that are
> irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined

a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational

trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" <u>Matsushita</u>

<u>Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery.

<u>Celotex</u>, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the

party opposing the motion must make an affirmative showing of the need for additional discovery

after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57

(6th Cir. 1989). <u>But see</u> <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir.

1989).

11

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be

granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

> It is likewise true that:
> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the

hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1.      Complex cases are not necessarily inappropriate for summary judgment.

14

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly"

established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

"In copyright infringement cases, 'summary judgment, particularly in favor of a defendant, is a practice to be used sparingly' because substantial similarity is often an extremely close question of fact, but 'a court may compare the two works and render a judgment for the defendant on the ground that as a matter of law a trier of fact would not be permitted to find substantial similarity.'" Jones v. Blige, 558 F.3d 485, 491 (6th Cir. 2009) (citations omitted); Brainard v. Vassar, 625 F. Supp.2d 608, 616 (M.D. Tenn. 2009). To prove a claim for copyright infringement, a plaintiff must establish: "'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Ellis v. Diffie, 177 F.3d 503, 506 (6th Cir. 1999) (quoting Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). "[C]opyright protection extends only to expression of ideas and not to ideas themselves." Stromback v. New Line Cinema, 384 F.3d 283, 296 (6th Cir. 2004) (citing 17 U.S. C § 102(b)). "The *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991). Defendants do not contest Plaintiffs' ownership of the song "In the Backwoods." Thus, the issue is whether Plaintiffs' Song was copied.

16

Because direct evidence of copying is rare, a plaintiff frequently attempts to establish an inference of copying by showing "(1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." Ellis, 177 F.3d at 506. "A lesser showing of access (or even no showing at all) will suffice where the works are 'striking[ly]' similar, strongly suggesting that copying occurred." Jones v. Blige, 558 F.3d 485, 491 (6th Cir. 2009) (citing Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp., 361 F.3d 312, 317 (6th Cir.2004)); Raum v. Norwood, 93 F. App'x 693, 696 (6th Cir. 2004) ("This court has recognized that there is an inverse relationship between access and substantial similarity such that if two compositions are 'strikingly similar' and the allegedly infringing material is of a 'highly unique pattern,' then infringement can be found with a lesser quantum of evidence of access.").

"Access is essentially 'hearing or having a reasonable opportunity to hear the plaintiff['s] work and thus having the opportunity to copy.'" Ellis, 177 F.3d at 506. (citation omitted). As described by the Sixth Circuit,

> "'Access is proven when the plaintiff shows that the defendant had an opportunity to [listen to] or copy plaintiff's work.'" "'Although evidence that a third party with whom both the plaintiff and defendant were concurrently dealing had possession of plaintiff's work is sufficient to establish access by the defendant, access may not be inferred through mere speculation or conjecture.'" " 'A mere assertion of access, unsupported by probative evidence is inadequate.'" "'Nor is a 'bare possibility' of access sufficient . . . [; a] plaintiff must establish that defendant(s) had a 'reasonable possibility' to view plaintiff's work.' "

Jones v. Blige, 558 F.3d 485, 491 (6th Cir. 2009) (citations omitted).

Based upon the factual record, the Court finds material factual disputes on Defendants' access. Carmichael testified that Paulin told him "that he liked that 'backwoods' song." (Docket Entry No. 140-1, Carmichael Deposition at pp. 64, 154-55; Docket Entry No. 225 at ¶ 21; Docket Entry No. 245 at ¶ 39; Docket Entry No. 140-7, Paulin Deposition at p. 36). Britton Currie also

testified that Paulin was present at a November 3, 2004 showcase at 3rd & Lindsley when Currie performed "In the Backwoods." (Docket Entry No. 140-3, Currie Deposition at pp. 92-94, 105-06). Plaintiffs also submitted testimony that Heather Currie handed a copy of the Project to Stover and that Britton Currie handed a copy of the Project to Stover at a showcase for Rachel Lane. Yet, Defendants dispute that Paulin was at any of Currie's showcases in 2004, citing Paulin's testimony that as he was recovering from surgery in the spring and then had a second, corrective surgery in early October, (Docket Entry No. 140-7, Paulin Deposition at p. 158), Paulin only left home for work and "not to [his] knowledge" did he attend any showcases. Id. Defendants' proof also disputes access on the location of Stover's business and policy on accepting unsolicited materials. The resolution of these factual disputes must be determined by a jury.

The "substantial similarity" inquiry "first requires a filtering of the unprotectable aspects of the protected work, then asks whether an 'ordinary observer' would perceive the original and the alleged copy as substantially similar." Fogerty v. MGM Group Holdings Corp., Inc., 379 F.3d 348, 352 (6th Cir. 2004). "The essence of the first step is to filter out the unoriginal, unprotectible elements—elements that were not independently created by the inventor, and that possess no minimal degree of creativity—through a variety of analyses." Kohus v. Mariol, 328 F.3d 848, 855 (6th Cir. 2003) (citation omitted). Courts should also "filter out *scenes a faire*: 'those elements that follow naturally from the work's theme, rather than from the author's creativity,' or elements that are 'dictated by external factors such as particular business practices.'" Id. at 856 (citations omitted).

"For example, parties, alcohol, co-eds, and wild behavior are natural elements in a story about a college fraternity. Similarly, '[e]lements such as drunks, prostitutes, vermin and derelict cars would appear in any realistic work about ... policemen in the South Bronx,' and therefore are not

afforded copyright protection." Stromback, 384 F.3d at 296; see Black v. Gosdin, 740 F. Supp. 1288, 1292, 1293 (M.D. Tenn. 1990) (in a copyright infringement action involving two country music songs, the court, noting that the elements common to both songs involved a jukebox, a bar, a jilted lover, his emotional dependency on a particular country music song and the perception of the man by those around him, stated that "the subject matter of the two songs is so common in country music that it constitutes one of the genre's 'stock' themes" and that "[h]aving chosen the familiar theme of a broken-hearted lover seeking solace in country music, the choice of a barroom with a jukebox as the setting in which to unfold this idea simply cannot be attributed to any unique creativity on the part of the songwriter.").

"After filtering out the unprotectible elements such as ideas and *scenes a faire*, the final step is to determine whether the allegedly infringing work is 'substantially similar' by comparing the two works. Substantial similarity exists where 'the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value.'" Stromback, 384 F.3d at 297 (citations omitted). "[T]he copying of a relatively small but qualitatively important or crucial element can be an appropriate basis upon which to find substantial similarity. However, 'random similarities scattered throughout the works' are not a proper basis for a finding of substantial similarity." Bridgeport Music. Inc. v. UMG Recordings, Inc., 585 F.3d 267, 275 (6th Cir. 2009) (citations omitted). Ultimately, "the question is whether, based upon his 'net impression' of the works' expressive elements, the ordinary lay observer would find them substantially similar to one another." Stromback, 384 F.3d at 297.

Summary judgment is permissible on the issue of substantial similarity as "the question of substantial similarity can usually be decided on the basis of the works themselves and rarely, if ever, involves questions of credibility, the peculiar province of the jury. Also, while judges 'may not be qualified literary critics, [they] are fitted by training and experience to compare literary works and determine whether they evidence substantial similarity.'" Murray Hill Publ'ns, 361 F.3d at 321 (citations omitted).

Defendants contend that Plaintiffs cannot meet their burden of proving substantial similarity with respect to either the lyrics or the music at issue as the only substantially similar lyrical element that the two compositions share is the phrase "in the backwoods," and perhaps references to "women" and "rivers," which represent nothing more than unprotectable themes, words and short phrases. Defendants further contend that any claimed musical similarity is not protectable in that those similarities represent common musical techniques inherent in the country music genre, and are found in prior art searches of songs created prior to Plaintiffs' Song. Plaintiffs contend that they do not assert copyright in a dissected phrase devoid of a musical setting as Defendants argue, but rather in a complete musical composition where those three words, "in the backwoods," appear.

To be sure, the phrase "in the backwoods," is neither protecable nor are the stock themes associated with being out in the country backwoods. Yet, Plaintiffs are asserting infringement of a complete musical composition. In Bridgeport Music, Inc. v. Smelzgood Entm't, Inc., No. 3:01-0780, 2006 WL 2432126 (M.D. Tenn. Aug. 21, 2006), the Court cautioned:

> [B]y dissecting copyrightable material into its smallest forms, a party can always find non-unique words and phrases. Indeed, "[i]n assessing originality, courts must be mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently appear in various compositions, especially in popular music." Newton v. Diamond, 204 F. Supp.2d 1244, 1252 (C.D.

20

> Cal. 2002). Likewise, courts must be mindful of the limited number of words or
> phrases in any particular language available to lyricists.

Id. at *3. The Court noted that "[t]he infringement here is alleged to be of a musical composition, and a musical composition is the cumulation of lyric, melody, and rhythm." Id. at *4.

As stated supra, "[i]n copyright infringement cases, 'summary judgment, particularly in favor of a defendant, is a practice to be used sparingly[.]'" Jones, 558 F.3d at 491. Here, Stewart's testimony that both Songs are substantially similar in melodic setting, rhythm, and metric placement creates an issue of fact as to whether there is substantial similarity between the two Songs.

After "a plaintiff establishes access and substantial similarity, the defendant may rebut the presumption of copying by showing independent creation of the allegedly infringing work." Fogerty, 379 F.3d at 352. Yet, as stated previously, "even without proof of access, a plaintiff still may prevail by showing a 'striking similarity [between the works], precluding all possible conclusion but that the work was copied.'" Id. (citation omitted). "Such striking similarity 'preclude[s] the possibility of independent creation.'" Murray Hill Publ'ns, 361 F.3d at 317 (citations omitted). To be sure, "even in a striking similarity case, '[a]bsent copying, there can be no infringement.'" Id. (quoting Mazer v. Stein, 347 U.S. 201, 218 (1954)). Yet, "striking similarity carries the burdens of proof that the infringing work is sufficient similar as to intrude into the copyrighted work's protection *and* that the defendant must have had access to the copyrighted work, even if the plaintiff can provide no extrinsic proof of that fact." Id.

Because Plaintiffs have established a dispute of fact as to whether Paulin and Stover had access to Plaintiffs' Song, Plaintiffs have therefore established a dispute of fact as to whether Moore independently created "Backwoods," as Paulin and Stover co-wrote the song with Moore. See Jones, 558 F.3d at 491 ("[E]vidence that a third party with whom both the plaintiff and defendant were

21

concurrently dealing had possession of plaintiff's work is sufficient to establish access by the defendant, [although] access may not be inferred through mere speculation or conjecture.") (citations and quotation marks omitted).

### 1. Plaintiffs' Claim for Declaratory Judgment

Plaintiffs seek a declaratory judgment that Defendants' Song is an "unauthorized derivative work" and, as a result, Plaintiffs are entitled to obtain ownership of Defendants' Song if that Song were found to be infringing Plaintiffs' Song. Defendants contend that Plaintiffs' claim for declaratory relief fails as a matter of law as the Copyright Act does not provide such a remedy and that Plaintiffs cannot meet the Sixth Circuit test for establishing a work as an unauthorized derivative even if ownership of the "unauthorized derivative" were allowable under the Copyright Act.

In response, Plaintiffs concede that "the Copyright Act does not specifically provide a mechanism by which to determine ownership of the infringing work at the conclusion of a lawsuit," (Docket Entry No. 218 at 31), but argue that because Plaintiffs' composition is inextricably interwoven into the alleged infringing work, Plaintiffs should be declared the owners of the material that has been used unlawfully by Defendants in "Backwoods."

As factual disputes exist in relation to Plaintiffs' copyright infringement claim, the Court concludes that it need not resolve this issue at this juncture. Accordingly, the Court concludes that Defendants' motion for summary judgment on this claim should be denied without prejudice.

### 2. Plaintiffs' Claim for Recovering Attorneys' Fees and Statutory Damages

Defendants contend that the plain language of the Copyright Act bars Plaintiffs from recovering statutory damages and attorneys' fees because Defendants' alleged infringement of Plaintiffs' Song commenced almost three years before Plaintiffs registered the copyright in their

22

Song in 2012. Plaintiffs assert that they are entitled to recover attorney's fees and, if elected, statutory damages under the Copyright Act because Defendants initiated alleged acts of infringement that were separate from those acts that occurred before the effective date of Plaintiffs' copyright registration.

As factual disputes exist in relation to Plaintiffs' copyright infringement claim, the Court concludes that it need not resolve this issue at this juncture. Accordingly, the Court concludes that Defendants' motion for summary judgment on this claim should be denied without prejudice.

## C. CONCLUSION

Accordingly, for these reasons the Court concludes that due to material factual disputes, Defendants' motion for summary judgment (Docket Entry No. 180) should be denied as to Plaintiffs' copyright infringement claim, but be denied without prejudice as to Plaintiffs' claims for declaratory judgment and for recovering attorneys' fees and statutory damages.

An appropriate Order is filed herewith.

**ENTERED** this the 20 day of September, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge